CHARTER OAK FINANCIAL GROUP, LLC &ast; IN THE
1406-B Crain Highway, Suite 303
Glen Burnie, Maryland 21061 &ast; CIRCUIT COURT

     Plaintiff &ast; FOR

v. &ast; ANNE ARUNDEL COUNTY,

MECHANICAL & ELECTRICAL &ast; MARYLAND
CONTRACTORS, INC.
3407-B Eastern Boulevard &ast; Case No.:
Baltimore, Maryland 21220
&ast;

SERVE ON:
&ast;

David S. Metz
3407-B Eastern Boulevard &ast;
Baltimore, Maryland 21220
&ast;

and
&ast;

DAVID S. METZ
12831 Sand Dollar Way &ast;
Baltimore, Maryland 21220
&ast;

and
&ast;

RICHARD HUTSON
9805 Hickoryhurst Drive &ast;
Baltimore, Maryland 21236
&ast;

and
&ast;

ROY KIRBY & SONS, INC.
1421 Clarkview Road, Suite 130 &ast;
Baltimore, Maryland 21209
&ast;

SERVE ON:
&ast;

Steven A. Thomas
100 Light Street, Suite 1000 &ast;
Baltimore, Maryland 21202
&ast;

and
&ast;

#185017.1

RIPARIUS CONSTRUCTION, INC.
375 West Padonia Road                                   *
Timonium, Maryland 21093
                                                        *

SERVE ON:
                                                        *

Michael J. McCarthy
375 West Padonia Road                                   *
Timonium, Maryland 21093
                                                        *

     Defendants
                                                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \* - \*    \*    \*

## COMPLAINT

Plaintiff, Charter Oak Financial Group, LLC ("Charter Oak"), by and through its undersigned counsel, pursuant to Maryland Rules of Civil Procedure, files this Complaint against Mechanical & Electrical Contractors, Inc. ("Mechanical"), David S. Metz ("Metz"), Richard Hutson ("Hutson"), Roy Kirby & Sons, Inc. ("Kirby"), and Riparius Construction, Inc. ("Riparius"), and, in support thereof, states:

### I. STATEMENT OF THE PARTIES

1.     Charter Oak is organized under the laws of the State of Maryland and maintains its principal place of business at 1406-B Crain Highway, Suite 303, Glen Burnie, Maryland 21061.

2.     Mechanical is organized under the laws of the State of Maryland and maintains its principal place of business at 3407-B Eastern Boulevard, Baltimore, Maryland 21220.

3.     Upon information and belief, Metz is the President of Mechanical, a citizen of the State of Maryland, and resides at 12831 Sand Dollar Way, Baltimore, Maryland 21220

4.      Upon information and belief, Hutson is the Secretary and Treasurer of Mechanical, a citizen of the State of Maryland, and resides at 9805 Hickoryhurst Drive, Baltimore, Maryland 21236.

5.      Kirby is organized under the laws of the State of Maryland and maintains its principal place of business at 1421 Clarkview Road, Suite 130, Baltimore, Maryland 21209.

6.      Riparius is organized under the laws of the State of Maryland and maintains its principal place of business at 375 West Padonia Road, Timonium, Maryland 21093.

## II. STATEMENT OF JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to Md. Code Ann. Cts. & Jud. Proc. § 1-501 (1998).

8.      This Court has personal jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102 (1998).

9.      Venue in this matter is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201 (1998).

## III. STATEMENT OF FACTS

### A. The Agreement

10.     On October 27, 2000, Charter Oak and Mechanical entered into a Purchase and Sale Agreement ("Agreement") whereby Charter Oak purchased certain of Mechanical's accounts receivable. A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein by this reference.

11.     As an inducement for Charter Oak entering into the Agreement, Mechanical made a number of warranties, representations and covenants to Charter Oak. Included among those warranties, representations and covenants were the following:

#185017.1

3

(b) [Mechnical] is the sole and absolute owner of the Accounts, free and clear of any liens, security interests or encumbrances, and has the full legal right to sell, assign and transfer the Accounts, and the sale, assignment and transfer thereof does not contravene or conflict with the terms of any other agreement, commitment or instrument to which [Mechanical] is a party;

. . .

(d) Each Account represents an accurate and undisputed statement of indebtedness from an Account Debtor of [Mechanical] for a sum certain, without offset or counterclaim and which is due and payable within 90 days of invoice date or less;

. . .

(h) [Mechanical] will not under any circumstance, or in any manner whatsoever, interfere with any of [Charter Oak's] rights under this Agreement;

(i) [Mechanical] has not and will not, at any time, permit any lien, security interest or encumbrance to be created upon any of the Accounts . . . ;

(j) [Mechanical] will not change or modify the terms of the Accounts with any Account Debtor unless [Charter Oak] first consents in writing;

(n) All invoices for the Accounts will state plainly on their face that the Accounts represented thereby have been sold and assigned to [Charter Oak] and are irrevocably payable only and directly to [Charter Oak]; . . .

(Agreement at ¶ 3).

12.    As a further inducement for Charter Oak to enter into the Agreement, Mechanical granted Charter Oak a continuing security interest in Mechanical's "accounts, goods, fixtures, instruments, documents, chattel paper and general intangibles . . ., whether now owned or hereafter created or acquired by [Mechanical] , wherever located, and all replacements and substitutions therefor, accessions thereto, and products and proceeds thereof, and all property of [Mechanical] at any time in [Charter Oak's] possession." (Agreement at ¶ 9.1).

#185017.1                                        4

13. Paragraph 10 of the Agreement provides that Mechanical "will hold in trust and safekeeping, as the property of [Charter Oak] and immediately turn over to [Charter Oak], the identical check or other form of payment received by [Mechanical] if payment on the Accounts come into [Mechanical's] possession." (Agreement at ¶ 10). Additionally, that provision continues, in pertinent part, as follows: "Should [Mechanical] come into possession of a check comprising payments owing to both [Mechanical] and [Charter Oak], [Mechanical] shall turn over said check to [Charter Oak]. (Agreement at ¶ 10).

14. Paragraph 11 of the Agreement reads as follows: "[Mechanical] will furnish to [Charter Oak] such financial statements and other information as may, from time to time, be requested by [Charter Oak]. (Agreement at ¶ 11).

15. "In the event that any Account is not paid for any reason whatsoever . . . [Charter Oak] shall have the right to chargeback such Account to [Mechanical]. (Agreement at ¶ 5).

16. The Agreement remained in effect until October 27, 2001 and was automatically extended for successive periods of one year. (Agreement at ¶ 23). Accordingly, the Agreement remains in effect to date.

## B. The Guarantee

17. On November 21, 2000, Metz and Hutson executed a Guarantee in favor of Charter Oak. A true and correct copy of the Guarantee is attached hereto as Exhibit B and incorporated herein by this reference.

18. The Guarantee provides that Metz and Hutson personally guarantee "and shall be jointly and severally liable with each other for any costs, expenses and/or damages suffered by [Charter Oak] by the virtue of the breach of any warranty, representation or covenant made by [Mechanical] of that certain [Agreement]." (Guarantee).

### C. Perfection of Security Interest

19.    On December 5, 2000, Charter Oak filed a financing statement ("Financing Statement") with the State Department of Assessment and Taxation as to the items in which it had been granted a security interest by Mechanical.  A true and correct copy of the Financing Statement is attached hereto as <u>Exhibit C</u> and incorporated herein by this reference.

### D. Assignments of Accounts Receivable

20.    After entering into the Agreement, Mechanical began selling and assigning certain accounts receivable, including, among others, those from Kirby and Riparius, and Charter Oak began advancing funds in payment for such accounts receivable.  The account debtors of the accounts receivable were notified by Mechanical, via assignment letters, that the accounts receivable had been purchased and assigned, and that future payments on the accounts receivable should be directed to Charter Oak.  Such assignments continued up through, and including, 2002.

21.    Riparius began making checks jointly payable to Mechanical and Charter Oak effective January 12, 2001.

22.    Kirby began making checks directly payable to Charter Oak effective July 1, 2002.

### 1. Kirby – Northrup Grumman Project

23.    On October 4, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the Northrup Grumman project, in the amount of Fifty Seven Thousand One Hundred Forty-Two Dollars and Eighty-Five cents ($57,142.85).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as <u>Exhibit D</u> and incorporated herein by this reference.

24. On October 9, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the Northrup Grumman project, in the amount of Forty-Two

Thousand Eight Hundred Eighty-Five Dollars and Seventy-One Cents ($42,885.71).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as <u>Exhibit E</u> and incorporated herein by this reference.

25.    On October 25, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the Northrup Grumman project, in the amount of Forty-Two Thousand Eight Hundred Eighty-Five Dollars and Seventy-One Cents ($42,885.71).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as <u>Exhibit F</u> and incorporated herein by this reference.

26.    On November 22, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the Northrup Grumman project, in the amount of Forty-Two Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($42,857.14).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as <u>Exhibit G</u> and incorporated herein by this reference.

## 2. Kirby – EZ Storage Project

27.    On October 11, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the EZ Storage project, in the amount of Twenty-One Thousand Four Hundred Fifty-Seven Dollars and Fourteen Cents ($21,457.14).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as <u>Exhibit H</u> and incorporated herein by this reference.

28.    On November 14, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the EZ Storage project, in the amount of Twenty-Eight Thousand Five Hundred Seventy-One Dollars and Forty-Three Cents ($28,571.43).  A true and

correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit I and incorporated herein by this reference.

29.    On December 6, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Kirby, for work done on the EZ Storage project, in the amount of Thirty-Seven Thousand Two Hundred Seventy-Eight Dollars and Eighty-One Cents ($37,278.81). A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit J and incorporated herein by this reference.

### 3. Riparius – Millenium Project

30.    On August 14, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Seventeen Thousand Forty-Eight Dollars and Fifty-Six Cents ($17,048.56). A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit K and incorporated herein by this reference.

31.    On November 27, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Twenty-Three Thousand Two Hundred Forty-Four Dollars and Seventy-Five Cents ($23,244.75). A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit L and incorporated herein by this reference.

32.    On November 27, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Twenty-One Thousand Six Hundred Eighty-Eight Dollars and Twenty Cents ($21,688.20). A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit M and incorporated herein by this reference.

33.    On November 27, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Twenty-Six Thousand Five Hundred Twenty-Four Dollars and Fifty Cents ($26,524.50).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit N and incorporated herein by this reference.

34.    On November 27, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Thirty Thousand Two Hundred Seventy-Seven Dollars and Eighty Cents ($30,277.80).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit O and incorporated herein by this reference.

35.    On December 6, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Thirty-Three Thousand Eight Hundred Seventy-Eight Dollars and Thirty-One Cents ($33,878.31).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit P and incorporated herein by this reference.

36.    On December 17, 2002, Mechanical sold and assigned Charter Oak accounts receivable from Riparius, for work done on the Millenium project, in the amount of Twenty-One Thousand Four Hundred Fifty-Seven Dollars and Fourteen Cents ($21,457.14).  A true and correct copy of Schedule A, which memorializes the sale and assignment, is attached hereto as Exhibit Q and incorporated herein by this reference.

### 4. Non-Payments on Accounts Receivable

37.    Beginning in November 2002, Kirby and Riparius stopped making payments to Charter Oak, and started making such payments to Mechanical.

38.    Upon information and belief, in November 2002, Mechanical actively encouraged Kirby and Riparius to stop sending payments to Charter Oak, and, instead, directed that such payments be made to it.

39.    On February 3, 2003, Metz wrote to Ron Lowery of Kirby. That letter, in pertinent part, reads as follows: "Please be advised that [Mechanical's] position is that no further payments are due to Charter Oaks (sic). Accordingly please be advised and instructed that all amounts dues (sic) from your company to [Mechanical] should be paid only to [Mechanical], and not to Charter Oaks (sic)." A true and correct copy of this letter is attached hereto as Exhibit R and incorporated herein by this reference.

40.    Presently, Charter Oak is due Four Hundred Eighty-Seven Thousand Three Hundred Fifty Dollars and One Cent ($487,350.01) for the accounts receivable purchased from, and assigned by, Mechanical and associated fees. Upon information and belief, of that amount, Two Hundred Seventy-Three Thousand Seventy-Eight Dollars and Seventy-Nine Cents ($273,078.79) is due and owing from Kirby, and One Hundred Sixty-Five Thousand Five Hundred Forty-Seven Dollars and Fifty-Two Cents ($165,547.52) is due and owing from Riparius.

## COUNT I
### Breach of Contract - Mechanical

41.    Charter Oak incorporates and restates the allegations of paragraphs 1 through 40 as if fully set forth in this Count.

42.    By encouraging and instructing Kirby and Riparius not to make payments to Charter Oak, Mechanical interfered with Charter Oak's rights under the Agreement, and thus breached the terms of the Agreement.

43.    By modifying the terms of its accounts with Kirby and Riparius, Mechanical breached the terms of the Agreement.

44.    As a direct and proximate result of Mechanical's breaches, Charter Oak has incurred and will continue to incur substantial damages.

WHEREFORE, Charter Oak requests that this Court:

(a)    Enter Judgment for Charter Oak against Mechanical, in the amount of Four Hundred Thirty-Eight Thousand Six Hundred Twenty-Six Dollars and Thirty-One Cents ($438,626.31), plus interest, costs and attorneys' fees;

(b)    Allow Charter Oak to audit the financial records of Mechanical pursuant to the Agreement; and

(c)    Grant Charter Oak such other and further relief as the nature of this case may require.

## COUNT II
### Conversion - Mechanical

45.    Charter Oak incorporates and restates the allegations of paragraphs 1 through 44 as if fully set forth in this Count.

46.    Pursuant to the Agreement, Charter Oak had a right to receive payments from Kirby and Riparius on their accounts receivable for Mechanical.

47.    In contravention of Charter Oak's right, Mechanical intentionally exercised, and continues to exercise dominion and control over those payments.

WHEREFORE, Charter Oak requests that this Court:

(a)    Enter Judgment for Charter Oak against Mechanical in the amount of Four Hundred Thirty-Eight Thousand Six Hundred Twenty-Six Dollars and Thirty-One Cents ($438,626.31) in compensatory damages and Three Hundred Seven Thousand Seventy-Eight

Dollars and Ninety-Seven Cents ($307,078.97) in punitive damages, plus interest, costs and attorneys' fees; and

(b)    Grant Charter Oak such other and further relief as the nature of this case may require.

## COUNT III
### Breach of Contract – Metz and Hutson

48.    Charter Oak incorporates and restates the allegations of paragraphs 1 through 47 as if fully set forth in this Count.

49.    By Mechanical's breaches of the Agreement, Metz and Hutson breached the terms of the Guaranty.

50.    As a direct and proximate result of Metz's and Hutson's breaches, Charter Oak has incurred and will continue to incur substantial damages.

WHEREFORE, Charter Oak requests that this Court:

(a)    Enter Judgment for Charter Oak against Metz and Hutson, jointly and severally, in the amount of Four Hundred Thirty-Eight Thousand Six Hundred Twenty-Six Dollars and Thirty-One Cents ($438,626.31), plus interest, costs and attorneys' fees; and

(b)    Grant Charter Oak such other and further relief as the nature of this case may require.

## COUNT IV
### Breach of Contract – Kirby and Riparius

51.    Charter Oak incorporates and restates the allegations of paragraphs 1 through 50 as if fully set forth in this Count.

52.    By operation of the Agreement, Charter Oak became the owner and assignee of Mechanical's accounts with Kirby and Riparius.

#185017.1                                12

53. After receiving assignment letters from Mechanical, Kirby and Riparius agreed to make future payments on its accounts with Mechanical to Charter Oak, and in furtherance of such agreements, Kirby and Riparius began making payments to Charter Oak.

54. By halting their payments to Charter Oak, Kirby and Riparius breached their contracts with Charter Oak.

55. Charter Oak has a right to payments from Kirby and Riparius by virtue of being the owner and assignee of Mechanical's accounts receivable, and may demand performance by payment from Kirby and Riparius, pursuant to Title 9 of the Commercial Law Article, as a result of having a perfected security interest in Mechanical's accounts receivable.

56. As a direct and proximate result of Kirby's and Riparius' breaches, Charter Oak has incurred and will continue to incur substantial damages.

WHEREFORE, Charter Oak requests that this Court:

(a) Enter Judgment for Charter Oak against Kirby in the amount of Two Hundred Seventy-Three Thousand Seventy-Eight Dollars and Seventy-Nine Cents ($273,078.79), plus interest, costs and attorneys' fees;

(b). Enter Judgment for Charter Oak against Riparius in the amount of One Hundred Sixty-Five Thousand Five Hundred Forty-Seven Dollars and Fifty-Two Cents ($165,547.52), plus interest, costs and attorneys' fees;

(b) Grant Charter Oak such other and further relief as the nature of this case may require.

Respectfully submitted,

_____

Patrick R. Buckler
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(tel)    (410) 659-4435
(fax)    (410) 659-4483

Attorneys for Charter Oak Financial Group, LLC